### DETERMINED BY THE

# SUPREME COURT OF APPEALS

#### OF

# WEST VIRGINIA

## CHARLESTON.

L. Kaufman v. Aaron Catzen *et als.*

Submitted September 26, 1917.  Decided October 2, 1917..

1. CONTRACTS—*Legality—Contract Contra Bonos Mores.*

    If the performance of the obligation of a contract furnishes: temptation to use improper influence with a public official, the contract is *contra bonos mores* and illegal, and no right or obligation can be founded upon it.  (p. 8).

2. JOINT ADVENTURES—*Interest in Property or Assets---Forfeiture.*

    A partner or coadventurer does not forfeit his interest in joint property or assets acquired in whole or in part with money he has. paid or advanced, by his abandonment of the enterprise, failure to contribute to expenses or opposition to the prosecution of the social purpose.  (p. 9).

3. SAME—*Settlement—Charges.*

    But, in the settlement and accounting, he is chargeable with the consequences of his derelictions and other misconduct.  (p. 9).

4. SAME—*Action Between Partners—Decree.*

    A decree in favor of one partner or coadventurer against another, awarding him right of full participation in the property and profits, entered in a cause in which the pleadings allege, and the. evidence tends to prove, breaches of the social contract, and referring it to a commissioner for the taking of an account, is erroneous.  Such a decree should either leave open the question of the extent of the right of participation or dispose of the issues. raised by the evidence of dereliction and misconduct, as bearing, not on the right of participation, but the extent thereof.  (p. 9)..

5. SAME—*Accounting—Agreement.*

    If a party to an agreemnt for a joint adventure, contributes money or purchases property therefor and expressly agrees that

81 W. Va.

his associate shall have sole and exclusive management and control thereof, he has no right to demand r̄ɔ̄ɛɛ than an accounting as to profits, while the enterprise continues and is solvent, in the absence of proof of misappropriation, fraud, insolvency or the like, on the part of his associate.   (p. 9).

6.  RECEIVER—*Accounting—Receivership.*

In a suit for such an accounting, he is not entitled to the appointment of a receiver for the control and management of the property and business, even though his interest therein has been denied and he has been wrongfully excluded from participation in profits and the managing partner has attempted to dispose of the entire property by a sale, in the absence of proof of fraud, insolvency or some other sufficient ground.   (p. 12).

7.  JOINT ADVENTURES—*Sale of Property.*

A purchaser of social property and business from one partner or adventurer, with knowledge of the right and title of the other who has been excluded from the enjoyment thereof, or of facts sufficient to put him upon inquiry as to the rights of the excluded party, takes it subject to such rights.   (p. 12).

(RITZ, JUDGE, Absent.).


Appeal from Circuit Court, McDowell County.

Suit by L. Kaufman against Aaron Catzen and others. Decree for plaintiff, and defendants appeal, and plaintiff takes a cross-appeal.

*Reversed in part.   Affirmed in part.   Remanded.*

*Alfred G. Fox, Sanders & Crockett* and *Russell S. Ritz,* for appellant.

*Lawson Worrell, Chapman, Peery & Buchanan* and *Anderson, Strother, Hughes & Curd,* for appellee.

POFFENBARGER, JUDGE:

The pleadings in this cause have developed issues as to a $30,000.00 money demand and a one-third interest in a right or privilege in the entire body of real estate on which the town of Clark in McDowell County is situated, herein designated a leasehold and the instrument creating it a lease, for convenience, and all of the rents and profits derived from buildings erected, and enterprises conducted by the

lessee, on said leasehold. These demands are asserted by the plaintiff against Aaron Catzen, his brother-in-law, and the Clark Development Company, a corporation, to which Catzen assigned the lease. By a decree in the cause, substantially disposing of these issues, the trial court has disappointed all of the interested parties. Accordingly, the defendant has appealed from the decree and the plaintiff has cross-assigned errors therein.

The tract of land upon which the lease was taken, containing 46.05 acres less two reservations, one the right of way of the Norfolk and Western Railway Co. and the other Lot No. 4 of block C, making a net area of about 44 acres, adjoins the town of Northfork and belongs to the Northfork Realty Co., a corporation. It is separated from the town of Northfork by the Elkhorn Creek. The Northfork Realty Co. executed to Catzen a lease thereof, dated August 27, 1907, and a recital of the instrument says it had been previously laid out in town lots and designated South Side Addition to the town of Northfork. The term of the lease was twenty-five years and the rental thereunder $30,000.00, cash in advance, for the first five years, $10,000.00 per year for the next ten years and $12,500.00 per year for the last ten years, total $255,000.00. It gives the lessee, on the termination of the lease, the option of renewal for another period of twenty-five years, on a rental of $12,500.00 per year.

Though Kaufman, the plaintiff, is not a party to the lease, it is conceded that he paid the cash rental of $30,000.00 and was to have had a one-third interest in the enterprise. Between him and Catzen, the lessee, there was to have been a written collateral agreement, and two such agreements were prepared by an attorney, after consultation with them as to the terms thereof, neither of which was ever signed by both parties, the plaintiff having declined to sign the first and the defendant the second.

There were no buildings or other improvements on the property at the date of the lease, except a pest-house. Much of it was low and subject to overflow by the Elkhorn Creek. To make it practicable and available as a town site, it was necessary to build a wall to prevent the creek from over-

flowing it, fill up the low places and grade the streets. Cat-zen claims to have spent more than $21,000.00 .in the first five year period of the lease, in the making of such improve-ments, construction of sewers and bridges and installation of water-works. He claims also to have expended nearly $40,-000.00 in the same period, in other ways, partly in the con-struction of buildings. Kaufman contributed nothing at all to these expenses. Of the $60,000.00 invested, Catzen says he borrowed 30,000.00 from his brother, Morris Catzen, and $20,000.00 from the Flat Top National Bank, and he claims the balance came from the proceeds of sales of some property he had and some his wife had and savings accumulated by his children. According to a statement filed by him, his total receipts from ground rents of the leased property, for the same period, amounted to $9,015.00. Near the end of the fifth year, Catzen, having become convinced that he would be unable to pay a rental of $10,000.00 a year thereafter, so advised his lessor, the Northfork Realty Co., and offered to surrender the lease, unless the company would reduce the rent from $10,000.00 to $6,000.00 a year. Thereupon, the board of directors passed a resolution so reducing it for the ensuing ten years, but with the proviso. that the reduction should not in anywise abrogate the contract. Finding his burden still too heavy, he procured the organization of the Clark Development Company, a corporation, to which he as-signed his lease, in consideration of $95,000.00 of the capital stock thereof, and transferred $30,000.00 of that stock to his brother, Morris Catzen, in payment of his indebtedness to him, and $10,000.00 to Dr. L. H. Clark, to whom he was indebted in an equivalent amount, and $1,000.00 to Louis Schwartz to whom he was also indebted. S. Sonnenberg took $5,000.00 of the stock, giving the com-pany his note in consideration thereof. The cash re-ceipts of the Clark Development Company, from Sept. 1, 1912, until June 30, 1916, amounted to $91,637.14, and its disbursements for the same period, amounted to $85,703.06. On June 30, 1916, it had $5,933.58 in cash and outstanding accounts amounting to $7,185.00. At the same time, it owed a certain bank $2,500.00, the Northfork Realty

Co. one year's rent, $6,000.00, Aaron Catzen $7,200.00 on account of his salary, as manager. It also had suretyship liabilities amounting to $30,500.00. Its principal income arose from house rents and ground rents, the former amounting to $36,024.18 and the latter to $16,054.01, from Sept. 1, 1912, to June 30, 1916. Of the disbursements, $18,000.00 went to the Northfork Realty Co. for rent. The other large items were for improvements and payment of indebtedness.

Kaufman's original bill filed against Catzen alone, sought discovery from him as to the profits realized from the business, a decree for repayment of his $30,000.00, out of the profits accrued and to accrue, and an adjudication of his right to one-third of the accrued profits in excess of the $30,000.00 and one-third of the profits hereafter to be realized, and appointment of a receiver to take charge of the property and manage it. His amended bill, making the Clark Development Co. and Dr. L. H. Clark, its president, parties, prayed for the same relief. Admitting his payment of the $30,000.00 claimed, the answers base their denial of his alleged right of repayment thereof, upon their averments that the payment was made, by express agreement, for and in consideration of a one-third interest in the lease and was never to be returned. They also admit that he was to have had, for and as consideration for the payment, a one-third interest in the lease and the profits to be derived therefrom, but aver that he was also to aid in the development of the property, by a contribution of $20,000.00 for expenses, if needed, and otherwise; but they deny that he is now entitled to any right or interest therein whatever, because of his failure to contribute any money, labor or influence in the development thereof, and his effort, by the use of almost every means in his power, to prevent such development and wholly defeat the enterprise. They also aver honest, faithful and efficient management of the property, by the defendants, and therefore, deny the right in him to have a receiver appointed to take charge of the property, even though the court should find and determine that he has an interest therein. In the defense, it is rather conceded that the plaintiff might be entitled to an interest in any profits made during the first five

year period, the rental of which was paid by him, but it is denied that any profits accrued in that period. As to the repayment of the $30,000.00, the decree is in favor of the defendant. The court held that that payment was made as consideration for a one-third interest in the lease. It further held that the plaintiff was entitled to such interest in the lease and in the profits arising therefrom, and decreed accordingly, referred the cause to a commissioner for the taking of an account and appointed a receiver to take charge of the property and manage it.

The trial court's first finding is fully sustained by the evidence. The plaintiff and defendant had the proposition submitted to them by the Northfork Realty Co. under consideration for a period of thirty days, within which they considered the terms of the collateral agreement. These terms were orally stated by them in the presence of other parties, at the time of the execution of the lease and the payment of the rental for the first five years. L. E. Tierney, Dr. L. H. Clark, officers of the Northfork Realty Co., and Wyndham Stokes, the attorney who prepared the lease and drafted the collateral agreement, after consultation with them, all swear positively that the agreement, as stated in their presence, did not provide for repayment of the $30,000.00, and that it was treated as purchase money of an interest in the lease. Just what time elapsed between the consultation and the preparation of the draft does not appear, but it must have been short. The lease is dated August 27, 1907, but the transaction was evidently not closed on that day, for Kaufman's check for $20,000.00 and his note for $10,000.00 bear date, September 3, 1907, and they were both delivered on the occasion of the execution of the lease contract. A copy of a letter from Stokes to Kaufman, transmitting the first draft of the agreement, bears date, September 3, 1907. That draft expressly recited that the payment was made for and in consideration of a one-third interest in the lease, and specifically provided that the money so paid should not at any time be repaid, nor deducted, and that the payments under the agreement, of the one-third interest assigned, should not have any reference thereto. The copy of the first draft filed as an exhibit with

Catzen's deposition, was obtained from Mr. Stokes, about, March 4, 1915. Hence, there can be no doubt that it is a copy of the draft made by him. On the 3rd day of September 1907, the plaintiff made objections to it, because of its provision as to the money he had paid and also another one vesting complete control and management of the property in Catzen and expressly depriving the plaintiff of any voice therein. By a letter dated, September 3, 1907, after the receipt of the draft first prepared, he requested Stokes so to alter it as to provide for repayment of the $30,000.00 out of the profits to be derived from the lease and to allow him to retain a one-third interest in the lease, after such repayment, and also to require Catzen to consult him, in respect to all sales, business and other enterprises that he should conduct on the leased premises, as if he were a full joint owner or equal partner. In this letter, he did not claim the draft departed in any respect from the oral agreement. He simply requested the insertion of these two clauses. On the receipt of this letter, Stokes redrafted the agreement, embodying the suggested clauses in it, and evidently sent each of the parties a copy thereof. After having received his copy, Catzen called upon Kaufman, denounced the second draft as a departure from the agreement and flatly and positively refused to sign it. Kaufman himself does not directly nor specifically deny that the first draft conformed to the understanding between the parties, as it was stated to Stokes. On the contrary, he says in his testimony: "I received the contract made out by Mr. Stokes, and everything was just exactly as Mr. Catzen had explained to Mr. Stokes, and everything was agreeable, not one word was there that Mr. Catzen didn't say except one. I agreed to it myself, as I am the one to put it in there, everything was agreeable in the contract that Mr. Stokes wrote out like Mr. Catzen had explained. I was reading that contract over for a couple of hours, and it come to me that since I know Mr. Catzen and he is not in business, and he had never made any success and he was in five or six businesses in my time, and I thought to myself it would be too big a proposition for Mr. Catzen, and just let me put in them few words, that if, at any time, Mr. Catzen

needs to do any kind of work on the place, that Mr. Catzen shall come and consult with me." He insists that the money was to be repaid, but not that he had so stated in the narration of the agreement in the presence of Stokes, Tierney and Clark. Nor is he positive and definite in his testimony, that it was to be repaid out of the profits anticipated from operations under the lease. He does say that, but he goes on and explains that he had no money at the time, that he was compelled to borrow the entire amount and that he and Catzen expected to be able to pay it off within a year, from profits to accrue to them from his saloon business in Northfork and from another saloon business to be established on the leased premises. His explanation goes not to repayment to him, from profits to accrue from the lease, but to methods agreed upon between him and Catzen, for discharge of the indebtedness he had incurred in procuring the money with which to make the payment. Several witnesses testified to admissions made by Catzen, that the plaintiff was to be reimbursed and was to have, in addition to the money in question, a one-third interest in the lease, but he positively and emphatically denies all such statements, explaining that, in the conversations referred to, he meant only that the plaintiff would ultimately get his money back, in the distribution of profits, as and for earnings on, or returns from, his investment · in the lease. Some of the witnesses testifying to these admissions say Catzen said he might owe Kaufman and Kaufman might owe him. Two of them having taken stock in the Clark Development Company, manifest prejudice against Catzen, and are evidently dissatisfied with their investments. None of them may have closely observed the distinction made by him between profits and repayment. In passing upon the evidence, the trail court was justified in giving superior weight to the positive testimoney of the parties in whose presence the agreement was stated.

There is a very strong tendency in the evidence to prove that Catzen, in consideration of Kaufman's withdrawal of his potent opposition to the granting of a liquor license to Catzen or a tenant of his, or a transfer of an existing license to him or his tenant, and to the leased premises, promised to

sign the second draft of the written agreement. But, if he did, the promise to do so was founded upon an illegal and corrupt consideration, wherefore it was not binding in law and had no more effect than if it had never been made. Kaufman swears one member of the county court, the licensing tribunal, was so loyal to him, from considerations of personal friendship, that, at his instance, he prevented the granting of Catzen's permit, until he told him to grant it, and that, through this man, Tipton, he finally had the permit issued, in consideration of Catzen's promise to sign the agreement as he wanted it, and that Catzen, after having so obtained the permit, refused to sign the agreement. There is some evidence tending to prove the relation subsisting between Kaufman and Tipton had a corrupt pecuniary basis, but whether it did or not, Kaufman's admitted conduct falls within the condemnation of the law. He had no right to exert his personal influence, for the purpose and in the manner admitted, and the officer acted corruptly in submitting himself to it, with knowledge of the facts and the purpose. *Critchfield* v. *Paving Co.,* 174 Ill. 466; *Ramsey's Estate* v. *Whitbeck,* 183 Ill. 550; *Barber etc. Co.* v. *Batsford,* 56 Kan. 532; *Spalding* v. *Ewing,* 149 Pa. 375; *Boyd* v. *Cochrane,* 18 Wash. 281; *Millbank* v. *Jones,* 127 N. Y. 370; *Veazey* v. *Allen,* 173 N. Y. 359; Page, Contr. sec. 414.

Having accepted the benefit of Kaufman's money and obligated himself, in consideration thereof, to assign to him a one-third interest in the contract procured by the use of such money, Catzen cannot retain the benefit thereof and declare Kaufman's interest in the contract forfeited by reason of his breach of his agreement to aid in the development of the property, or his obstruction thereof. Such conduct may have afforded him ample ground for rescission of the contract, but he was bound to elect whether he would rescind and repay the money, thereby putting Kaufman in *statu quo,* or seek compensation for any damages he may have suffered in consequence of Kaufman's neglect, default or misconduct, in some other way. Such dereliction would have justified his own abandonment of the contract and relieved him of further performance thereof, but that would not have effected a

rescission, nor conferred right on him to retain the benefit of the large sum paid. In consequence of such abandonment, the money might have been lost, but that loss would have been an incident of the loss of the enterprise. The contract between them was not an entire working contract, made between persons sustaining no fiduciary relation. It was a joint enterprise to be conducted by both of them, wherefore failure of either fully to perform his part did not forfeit his fully acquired interest. Notwithstanding defaults and omissions, each has an interest in such assets as have been preserved or accumulated. Tested by the contract proved, the relation established between the parties may be that of joint adventurers whose rights, obligations and duties are similar to those obtaining among partners. That it may not be strictly one of copartnership, is not really an important factor in the present inquiry. *Berry* v. *Colburn,* 65 W. Va. 493; 15 R. C. L. p. 500; Title, Joint Adventure, sec. 2; 23 Cyc. 453. Kaufman's default may have conferred right upon Catzen to sue him either for contribution or reimbursement for funds advanced, or damages for breach of the contract. *Saunders* v. *McDonough,* 67 South. 591, 595; *Lind* v. *Webber,* Am. & Eng. Ann. Cas. 1916 A. 1202, note 1214, 50 L. R. A. N. S. 1046; 15 R. C. L. 507; 23 Cyc. 457. But, after an investment has been made and valuable property acquired by the use of the funds of an adventurer or partner, his co-adventurer or copartner cannot wholly exclude him from enjoyment thereof, or forfeit his title or right, for failure to comply with the terms of his agreement. Under peculiar circumstances, a partner's abandonment of the enterprise will exclude him from benefits accruing after the abandonment. It did so in *Denver* v. *Roane,* 99 U. S. 356, and *Miller* v. *Chambers,* 73 Ia. 236, 5 Am. St. Rep. 675. The first of these cases involved an attorney's fee, earned after the abandonment and over the opposition of the deserting partner; and the second, a judgment acquired under similar circumstances. A sale of partnership assets by a copartner was sustained by proof of abandonment in *Quinn* v. *Quinn,* 81 Cal. 14, because a statute, in the opinion of the court, impliedly authorized such sale. *Howell* v. *Harvey,* 5 Ark. 270, 39 Am.

Dec. 376, holds the deserting partner to liability for an accounting, and *Cole* v. *Moxley,* 12 W. Va. 730, asserts and applies the same principle. None of these decisions sustain the position taken by the appellants. *Ryman* v. *Ryman,* 100 Va. 20, makes an abandonment work a dissolution of the partnership, but not a forfeiture of acquired rights in partnership assets. It denied an accounting for another reason, loss of evidence and confusion of accounts by the plaintiff, the active partner, to such an extent as to render it impossible to ascertain the rights of the parties.

Payment of the rental for the first five years constitutes the very basis of all of Catzen's acquisitions under the tenancy. It gave the opportunity for further investment and enterprise. Through it, Catzen obtained the valuable privilege in question and Kaufman acquired at the same time, a one-third interest therein. That constitutes a vested right which his abandonment, if any, did not destroy, whatever its effect may be upon the question of dissolution or rights of the parties in an accounting.

The Clark Development Company bought the lease or privilege subject to Kaufman's right in it. All of the stockholders had notice thereof and also of the controversies between their assignor and the plaintiff. The corporation acquired Catzen's two-thirds of the property and all of his rights respecting the same, but no more. *Jones* v. *Neale,* 2 Pat. & H. 354; *Ford* v. *Herron,* 4 Munf. 316; *Pierce* v. *Trigg,* 10 Leigh 425; Bates, Part. sec. 291.

In so far as the decree awards to the plaintiff one-third of all profits arising from and growing out of the lease or contract and the business conducted thereunder, it is clearly erroneous. There is much evidence tending to prove that he was to contribute to the expenses of development and give the enterprise the benefit of his personal influence. Admittedly, he contributed nothing for that purpose and, to some extent, opposed his associate's prosecution of the work. As to whether he agreed to make contributions in money for development, and, if so, how much he was bound to contribute and when the money should have been furnished, the trial court

has made no findings. Nor has it ascertained whether any losses were occasioned by his obstruction of the enterprise or how far the obstruction, if any, extended. It may have been the purpose of the trial court to refer all these matters to the commissioner for findings of facts material in the settlement, but the decree literally forecloses them and the commissioner has not been required, in express terms, to make any inquiries concerning them. Moreover, it is uncertain whether they were relied upon in the pleadings, as grounds of abatement from the plaintiff's claims for profits or compensation to the defendants, or merely as ground of total exclusion of the plaintiff or forfeiture of his interest, and recovery of damages for his alleged breach of the contract. The latter purpose is the literal import of the answers in the nature of cross-bills, but they may be susceptible of a different interpretation. Passing over all of these questions, to another one, rather preliminary but basic in character, the court has decreed a full one-third to the plaintiff.

One partner or coadventurer has a clear right to charge his associate, in settlement, with his derelictions as to contributions of capital and also with the consequences of his malfeasances, misfeasances or non-feasances. *Childers* v. *Neely*, 47 W. Va. 70; *Moore* v. *Wheeler*, 10 W. Va. 35; *Towner* v. *Lane*, 9 Leigh 262, 276; *Wilson* v. *Barclay*, 27 Gratt. 234; Bates, Part. sec. 780.

No sufficient ground for the appointment of a receiver has been established. The agreement between the parties vested the power of sole and exclusive management and control in Catzen, and expressly deprived the plaintiff of any voice therein. Therefore, he is entitled only to admission to participation in title and profits and an accounting for the purpose of ascertaining whether any profits have accrued, and, if so, what sum he is now entitled to have out of them. No mismanagement, other than exclusion of such right and the attempted assignment of the entire privilege to the Clark Development Company, has been alleged or proved. On the contrary, the management seems to have been efficient and successful. Neither insolvency nor misappropriation of funds has been established.

For the reasons stated, so much of the decree as adjudges a full one-third of the accrued profits of the enterprise to the plaintiff and appoints a receiver to take over the management and control of the property will be reversed, annulled and set aside. In all other respects, it will be affirmed and the cause remanded.

*Reversed in part. Affirmed in part. Remanded.*