HEDGES v. MOUNTJOY.  (No. 6254.)

(Supreme Court, Appellate Division, First Department.  November 13, 1914.)

1. JOINT ADVENTURES (§ 4*)—CONTRACTS—CONSTRUCTION.
    Contracts between joint adventurers for the acquisition and disposal of land construed, and *held* not to entitle defendant, whom it was agreed should acquire legal title to land held by a joint adventurer, now dead, to acquire for his individual benefit the entire interest of such deceased adventurer, and demand that plaintiff pay one-tenth of the purchase money and all costs of the proceeding; hence plaintiff did not, by re-fusing to pay all such costs, forfeit his rights.
    [Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. §§ 3-6; Dec. Dig. § 4.*]

2. PLEADING (§ 376*)—ISSUES AND PROOF—ADMISSIONS—EFFECT.
    Defendant's admission of a fact in controversy renders proof thereof by plaintiff unnecessary.
    [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1225-1227; Dec. Dig. § 376.*]

3. JOINT ADVENTURES (§ 4*)—ACCOUNTING—RIGHT TO.
    Where it was agreed among joint adventurers that defendant should acquire title to land held by another adventurer, now dead, and that plain-

─────────────

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tiff should pay a percentage of the costs of the proceeding, plaintiff is entitled to demand an accounting, so that his share can be ascertained.

[Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. §§ 3–6; Dec. Dig. § 4.*]

4. JUDGMENT (§ 822*)—CONCLUSIVENESS—EFFECT.

Where plaintiff authorized defendant to institute an action in a foreign state to acquire title to a tract of land, which for the purpose of a joint adventure had been purchased by another, now dead, who advanced the purchase money, the foreign judgment, fixing the amount to which the estate of the decedent was entitled to be reimbursed, is conclusive, in the absence of fraud.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1454, 1488–1490, 1496–1500; Dec. Dig. § 822.*]

5. JOINT ADVENTURES (§ 4*)—INTEREST OF PARTIES.

One of several joint adventurers acquired a tract of land for the benefit of all, and then died. Thereafter defendant sued the executors of the deceased to compel sale of the land, and upon sale to reimburse deceased's estate for advances made, bought in the property free from all liens. Held, that the estate of the deceased joint adventurer was not thereafter entitled to any percentage of the property, and hence plaintiff cannot take his percentage of the whole land, free from the equity of the estate of the deceased adventurer, without paying his proportionate share.

[Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. §§ 3–6; Dec. Dig. § 4.*]

6. JOINT ADVENTURES (§ 4*)—INTEREST OF JOINT ADVENTURERS.

Where one of several joint adventurers was delegated by the others to acquire title to land, and he acquired an interest that was not contemplated that he should, the others may demand to share proportionately in such extra interest, on payment of their proportionate share of the expenses.

[Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. §§ 3–6; Dec. Dig. § 4.*]

Appeal from Special Term, New York County.

Action by Charles Hedges against Wilbert W. Mountjoy. From an interlocutory judgment for an accounting, defendant appeals. Modified and affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

John J. Crawford, of New York City, for appellant.
George W. Carr, of New York City, for respondent.

LAUGHLIN, J. [1-3] The correctness of the interlocutory judgment depends upon the construction of two agreements in writing, to the first of which the plaintiff was not a party, but acquired an interest therein by assignment. That contract was executed in triplicate, by and between M. L. Hellings, J. P. McNaughton, and S. S. Yoder, on the 21st of March, 1901. It recites that the parties intended to purchase certain lands, leases, and mineral rights in Indian Territory from the Indians, for which purpose, and for incidental expenses also, Hellings agreed to furnish the money, title to be taken in his name, and to be held for the benefit of the parties and of the defendant, whose respective interests were agreed upon as follows:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Hellings and Yoder were each to have $^{35}/_{100}$, McNaughton $^{20}/_{100}$, and the defendant $^{10}/_{100}$. It was further therein expressly provided that Hellings was to take title "with the distinct agreement and understanding that it is only for the reimbursement to him of all moneys paid, with 6 per cent. interest," and that it was to be held in trust by him for the benefit of the parties, as already stated, and that, after the purchase of the property, sales and leases should be made by Hellings to an extent sufficient to reimburse him for the amounts advanced with interest, "or such amount as he shall have paid as purchase money," and that after he should be reimbursed from the sales or leases "for purchase money, or expenses, with interest," he was to convey to the parties, including himself and defendant, "or such corporation or corporations, individuals or individual, as may be designated by majority of the parties hereto the remainder of said lands, including both the lands conveyed in fee simple and the leasehold land," and that their interests should be as already stated.

It appears that, pursuant to the provisions of this agreement, Hellings purchased a large tract of land and took title in his own name, and then died, without having sold or leased any part of it, or having been reimbursed for any part of the purchase price or expenses. In the meantime plaintiff had acquired one-half of McNaughton's interest, or $^{10}/_{100}$, and the defendant purchased Yoder's interest, making his interest $^{45}/_{100}$.

Thereafter, and on the 17th day of January, 1911, the plaintiff, defendant, and McNaughton, who together then owned all interests under the original agreement, with the exception of the Hellings interest, entered into an agreement in writing, the plaintiff being the party of the first part, and the defendant and McNaughton being parties of the second part, reciting the making of the original agreement, the purchase of lands by Hellings thereunder, the death of Hellings leaving a last will and testament, and the further change of interests as hereinbefore stated; and the plaintiff and McNaughton thereby assigned all their right, title, and interest in and to the original agreement to defendant, and released the executors of the estate of Hellings from any and all liability thereunder, and plaintiff agreed to bring such action or proceeding in the courts of the state of Oklahoma as might be necessary to permit the executors of Hellings to carry out the terms of the original agreement, and "to permit them to convey a good and sufficient title to the lands therein mentioned and described," and that, upon obtaining a final decree authorizing the executors to carry out such agreement or to convey the lands, he would "immediately convey such of the lands as he may deem advisable, as soon as title thereto shall be legally determined and vested in him, to one or more corporations to be organized to hold and develop the said lands." Then came the remaining provisions of the agreement, which are as follows:

"It is further agreed and understood by and between the parties hereto that the said J. P. McNaughton and Charles Hedges shall each be entitled to receive 10 per cent. of the total authorized capital stock of the said corporation or corporations, and of the lands not conveyed to corporations, subject, however, to the payment by the said McNaughton and Hedges to the said

party of the first part of 10 per cent. each of such sum or sums of money as the party of the first part may be obliged to pay to the executors of said M. L. Hellings, deceased, under and pursuant to the aforementioned agreement, and all costs and expenses necessarily incurred in such court proceedings as the party of the first part may be obliged to make in respect to the said agreement and land. Said party of the first part shall have the right to mortgage the said lands to pay the said sum or sums of money necessarily expended by him as aforementioned, in which event the interest of the parties in the equity shall be in the same proportion as they would otherwise have had in the land."

After making this agreement the defendant acquired McNaughton's interest, thus giving him $55/100$.

The testimony of the plaintiff and defendant, which was received without objection, that the negotiations were merged in the writing, doubtless on account of the prayer for reformation of the contract, is in accord to the effect that the negotiations preceding the execution of said agreement of January 17, 1911, contemplated that the defendant was to acquire full title from the executrix and executor of Hellings, free from any equity on account of Hellings' interest in the original agreement, and was to acquire the Hellings equity for himself, so that he would take Hellings' place in the joint adventure. It will be seen from the first agreement that Hellings' advances and disbursements were first to come out of the lands and leases purchased, by a sale or other disposition thereof, and the parties to the agreement and the defendant were to own the remaining equity in the proportions specified. If, therefore, the original plan by which Hellings was to be reimbursed out of the proceeds of sales was not carried out, it is manifest that neither he nor his estate was entitled to be reimbursed by the other parties in interest for the full amount of his advances and disbursements, but only for an amount proportionate to their interests, and thus he or his estate would be obliged to bear $35/100$ of such advances and disbursements, and, on being reimbursed by the other parties in interest for the remaining $65/100$ of such advances and disbursements, the parties would hold the property in the proportion of their respective interests as specified in the original agreement, or derived therefrom by assignments of interests, free from any claim by Hellings or the representatives of his estate for the advances or disbursements made by him.

The agreement of January 17, 1911, does not, or, at least, does not as clearly as did the negotiations preceding its execution, indicate that the entire Hellings interest, both for advances and disbursements and in the equity, was to be acquired by the defendant, either for himself, or for himself and plaintiff and McNaughton; and it is consistent with an intention on the part of the parties that he was merely to adjust the claim of Hellings' executors for advances and disbursements and to acquire the *legal title* to enable him to convey the property to a corporation or to the parties in interest, but that all parties in interest were to retain their fractional equitable interest as before. The agreement would be in accord with this view, in so far, at least, as it provides that plaintiff and McNaughton were to have no greater proportionate interest on account of the purchase by the defendant from the personal representatives of Hellings than they then possessed, namely, 10 per cent. each.

It is extremely doubtful whether the succeeding parts of the agreement, if construed literally, would give effect to the intention of the parties in all respects. If it contemplates that the entire Hellings interest was to be acquired free from any equities, then there is no apparent theory upon which plaintiff and McNaughton would obligate themselves to contribute 10 per cent. of the amount paid by the defendant for the Hellings interest, unless it was expected that the Hellings equity would prove to be of no value; but in any event it was as valuable as their own. If the defendant was to purchase the Hellings equity for himself, it is not reasonable to suppose that the plaintiff and McNaughton would contribute thereto, and it would seem, in that event, that they would have provided by the agreement that they were each to contribute 10 per cent. of the total advances and disbursements made by Hellings, leaving it for the defendant, on account of the interest which he then held and the Hellings interest which he was to acquire, to contribute the remaining 80 per cent., and leaving it for the defendant to pay the entire amount which represented the Hellings *equity,* if he was to acquire that solely for himself. If the defendant was to purchase the Hellings equity for himself and plaintiff and McNaughton, one would expect that they would take in proportion to the interests that they then held, which would give plaintiff and McNaughton each two-thirteenths of the Hellings interest in the equity, and the defendant nine-thirteenths thereof, and in that event we would also expect to have it provided in the agreement that plaintiff and McNaughton, instead of reimbursing defendant for only 10 per cent. of the total amount paid by defendant to Hellings' executors, would have agreed to reimburse him for 10 per cent. plus $5^5/_{13}$ per cent. of the amount so paid, for they would each thus acquire an additional interest in the property of $5^5/_{13}$ per cent. It is not probable that it was intended that the defendant should pay for interests to be acquired for them and not be reimbursed therefor. The provisions of the agreement so far considered, therefore, seem to require the construction that it was not contemplated that defendant should purchase the Hellings equity, at least, not in part for plaintiff and McNaughton, and the 10 per cent. of the amount to be paid to the Hellings executors, as used in the contract, has reference, not to the amount so to be paid, but to the total amount of the claim for advances and disbursements made by Hellings.

The provisions of the agreement with respect to reimbursing the defendant for the costs and expenses necessarily incurred by him in court proceedings in Oklahoma are open to the contention, made in his behalf, that he was to be reimbursed by plaintiff and McNaughton for the *entire* amount of such costs and expenses; but I think that is not the reasonable construction of the contract, and that the parties contemplated that he was to be reimbursed for those costs and expenses in the same proportion that he was to be reimbursed for moneys paid on account of Hellings' advances and disbursements. The terms of the contract with respect to these two matters are far from clear, and it is most difficult to ascertain the intention of the parties. I think, however, that the reasonable construction is that they contemplated adjusting the Hellings lien for advances and disbursements and the taking of title by the defendant subject to the Hellings equity, and that it was

expected that the Hellings estate would bear its proportion, namely, 35 per cent., of his advances and disbursements, and that each of the other parties would contribute in proportion to their respective interests.

To harmonize the agreement with these views, it is necessary to hold, what I think the parties intended but failed to express clearly, that the reimbursement of 10 per cent., instead of being of the amount paid by the defendant to the executors, was of the total amount of Hellings' advances and disbursements, or, in other words, 10 per cent. of the executors' lien for advances and disbursements, but that it was intended that the Hellings interest should bear its proportionate part, for he was only entitled to reimbursement from the other joint adventurers for 65 per cent. thereof, although he or his executors would have been entitled to have the whole amount of their claim deducted from any moneys realized on a sale of the land or leases. If that be what the parties intended, then it would be most natural that they would provide for bearing the expenses of the court proceedings in Oklahoma essential to authorize the transfer of the legal title to defendant in the same proportion.

I am of opinion that the provisions of the contract with respect to the costs and expenses incurred in court proceedings are susceptible of the construction that the plaintiff and McNaughton were each to bear 10 per cent. of the entire costs and expenses incurred in the court proceedings which the defendant was to bring, and that construction should be adopted, for it is quite unlikely that the plaintiff and McNaughton, who had such small interests, would have obligated themselves to bear the entire costs and expenses of the court proceedings. If defendant had exacted from his coadventurers compensation for his time and services in representing himself, with a much larger interest, as well as them, it is not probable that it would have been provided for by an agreement on their part to defray all costs and expenses that he might incur and which would inure to his own benefit in so much larger proportion than to theirs.

The negotiations of the parties preceding the execution of the agreement tend to support this construction. Prior to its execution defendant had given the plaintiff to understand that the executors of Hellings would sell and convey the land to him for $27,000, and that the executrix, who was defendant's aunt, had said that in so doing the executors would be throwing off $17,000 interest, and stated as the reason therefor as follows:

"But, of course, I don't know anybody else. I want that understanding to be with you."

Defendant claims that he assigned this as the reason for requiring plaintiff and McNaughton to agree to pay all the costs and expenses. The defendant first had an agreement prepared by which plaintiff and McNaughton were to reimburse him for four-thirteenths of the amount paid out by him, instead of 10 per cent., and there is evidence indicating that that percentage was proposed on the erroneous theory that under the original agreement Hellings was to be reimbursed by his coadventurers for the *full amount* of his advances and disbursements, and

was then to share with them in the equity. The plaintiff objected to that agreement upon the ground that the Hellings interest should bear its proportion, and finally the defendant yielded to that objection, and then had the agreement in question drafted, and it was executed by plaintiff without taking advice of counsel thereon.

If it had been intended to acquire the Hellings entire interest for the benefit of the plaintiff, McNaughton, and defendant, it would seem that the agreement originally proposed by the defendant, by which he and the plaintiff and McNaughton were to bear the entire amount to be paid to the executors of Hellings in the proportion that their existing interests bore to one another, would have been accepted, for that would have been contributing in proportion to their interest; but when we find that, on this precise objection being taken by the plaintiff, the Hellings interest should bear its proportion, the agreement then proposed was abandoned, and the one now under consideration adopted, it is a reasonable inference that it was contemplated that the amount which the defendant, representing himself and plaintiff and McNaughton, was to pay the Hellings executors, was only their proportionate share of the advances and disbursements made by Hellings, viz., 65 per cent., or else it must have been contemplated, *as the plaintiff testified,* that the defendant was to acquire the Hellings interest for himself and to bear 80 per cent. of the amount paid to the Hellings executors and 80 per cent. of the costs and expenses, and was to have $80/100$, and the plaintiff and McNaughton were each to bear 10 per cent., and to have $1/10$. The testimony of the defendant is also to the effect that he was to succeed to the Hellings interest. It was doubtless immaterial to the plaintiff whether the executors of Hellings bore 35 per cent. of Hellings' advances and disbursements and retained a 35 per cent. equity, or sold their equity to defendant and he contributed on account of the interest thus purchased 35 per cent. of Hellings' advances and disbursements; for, in either event, the plaintiff's proportionate share of such advances and disbursements would be the same, viz., 10 per cent., as was provided in the agreement.

After the execution of the agreement of January 17, 1911, an action was brought by the defendant herein against the Hellings executors and others in the district court of Ottoway county, Oklahoma, and in that action the various agreements to which reference has been made were before the court, and it was therein decided that the sum of $27,000 was due and owing to the estate of Hellings for moneys paid out for the purchase of lands pursuant to the provisions of the original agreement, and the executors were authorized to carry out that agreement by selling the lands at private sale for cash, or part cash and the balance to be secured by purchase-money mortgage, and that out of the proceeds of the sale the sum of $27,000 should be applied to the satisfaction of their said claim, and that a trust be declared under the original agreement, and established and enforced against the executors, in favor of the plaintiff, as to the lands or money remaining after payment of the purchase money, to the extent of 65 per cent. thereof, and for 35 per cent. in their own favor; and judgment to that effect was accordingly entered on the 3d day of April, 1911. By an order in that action bearing date October 9, 1911, it appears that the property had been sold by

the executors to this defendant for $27,000 cash on the 3d of April, 1911, but that he had been unable to pay the entire amount in cash, but was ready, able, and willing to pay $10,000 in cash and give a note and mortgage on the land to secure the remaining $17,000; and it was therein adjudicated that this was the highest offer obtainable for the land, that the sale was fairly and legally made, that $27,000 was a fair and adequate price for the land, and that a larger sum could not be obtained therefor. It also appeared by said order that there was a second sale of the premises, at which the plaintiff offered $10,000 cash and a note for $17,000 secured by mortgage for the balance, and that the court ratified the sale on those terms. With respect to the trust, that order provides as follows:

"And it further appearing that all of said lands have been sold, and all the proceeds thereof are necessary to be applied to the payment of the purchase money due the estate of said Martin L. Hellings, deceased, and there is nothing for the trust heretofore declared and established by the judgment of this court to attach to and operate upon, * * * no further order of this court is made in regard to the trust heretofore established by the judgment of this court, such order or direction being unnecessary."

The sale was consummated pursuant to the judgment and order, and the defendant made the cash payment of $10,000 and executed a mortgage upon the property to secure his note for $17,000. He then, notwithstanding the fact that he had in the meantime acquired the remaining McNaughton interest, took the position that on the part of the plaintiff and McNaughton the agreement of January 17, 1911, was *joint,* and that they thereby obligated themselves to reimburse him for 10 per cent. of the $27,000 and the *entire* amount paid or incurred by him for costs and disbursements, and he arbitrarily, without giving any items, at first demanded that the plaintiff pay him the sum of $3,-000, which he at first asserted was plaintiff's proportionate amount of the costs and disbursements, and later on he demanded that plaintiff pay all the costs and disbursements which he then claimed aggregated $5,000; and on the refusal of the plaintiff to comply therewith, and after some further negotiations and a tender of deed of the interest to which defendant conceded plaintiff was entitled, which was declined without examination, on account of his failure to furnish an itemized statement of the costs and expenses, and on account of his demand that plaintiff bear the entire amount thereof, the defendant, under date of May 11, 1912, and prior to the commencement of this action, wrote the plaintiff a formal letter to the effect that he elected to consider said agreement of January 17, 1911, void and of no force and effect, on the ground that the plaintiff had failed to comply therewith.

This action was then brought, and the relief demanded by the plaintiff, so far as material, is (1) that the agreement of January 17, 1911, be construed as obligating the plaintiff to pay only 10 per cent. of the costs and expenses, and for the reformation thereof if it be not susceptible of that construction; (2) that defendant furnish a copy of the deed from Hellings' executors to him, by which he claims to have acquired complete and perfect title to the lands, and of the mortgage executed by him, "and all the details of the settlement with said Hellings' executors"; (3) that defendant account in detail for the

moneys paid to the executors of Hellings, and for the costs and expenses incurred by him under said agreement of January 17, 1911; (4) that it be adjudged that plaintiff is entitled to receive 10 per cent. of the capital stock of any corporation formed by the defendant to take over the lands, and in addition thereto 10 per cent. of 35 per cent. of the capital stock, and that defendant be compelled to convey to plaintiff a one-tenth interest in all the lands not conveyed to a corporation, and a further one-tenth of a 35 per cent. interest therein, upon payment by plaintiff of one-tenth of the amount paid by the defendant to the executors of Hellings and one-tenth of the costs and disbursements incurred or paid by the defendant; and (5) that the court fix a time within which the decree should be consummated.

It is alleged that the defendant claimed to have obtained full title to the premises, free and clear of any claim, equitable or otherwise, on the part of the executors of Hellings, and upon the trial the defendant admitted that he had obtained such title. There is no evidence that the executors of Hellings have asserted any claim to any interest in the premises, and, aside from the admission of the defendant, which is sufficient for this action, it would seem, in view of the judgment of the court of Oklahoma, that they are not in a position to assert a claim, for the reason that the sale was made free from their claim for the purpose of discharging their lien in full, and it was so discharged by the proceeds of the sale; and to hold that they still retain an equity would be to require their coadventurers to pay the entire amount advanced and disbursed by Hellings. It will be seen by the prayer for relief that the plaintiff does not demand an interest in the $^{35}/_{100}$ interest in the lands representing what was formerly the Hellings interests, in the proportion of his interest to that of the defendant, which, as already observed, would be the proportion of $^{2}/_{13}$ to $^{11}/_{13}$, but he merely asks for 10 per cent. of that interest.

By the interlocutory judgment, from which the appeal is taken, it is adjudged that the plaintiff is liable for only 10 per cent. of the reasonable costs and expenses incurred by the defendant under the agreement of January 17, 1911, and that it was not necessary to reform the contract. With that construction we agree. It is also correctly adjudged that the plaintiff has not forfeited his rights under the contract, and that he is entitled to a detailed and accurate statement of account of all the necessary and reasonable costs and expenses of the court proceedings in Oklahoma.

[4] It is further adjudged that plaintiff was entitled to a detailed and accurate statement of account of the moneys advanced by Hellings in the purchase of the lands, and of the amount, if any, realized by Hellings, or by his executors, upon the sale of lands or leases, in order to enable this plaintiff to determine "what plaintiff's share of the contribution in discharge of said Hellings' said claim would be." I am of opinion that this part of the interlocutory judgment is erroneous. Hellings' claim for advances and disbursements was necessarily involved and decided in the action in Oklahoma, and the proportion thereof that it would have been for Hellings' share to bear, had he been reimbursed by his coadventurers, instead of having the lands

sold to satisfy his claim, is fixed by the contract. The plaintiff, having authorized the defendant to begin an action in Oklahoma for the purpose of having that and other questions authoritatively decided, is concluded by the judgment of the court, in the absence of fraud or bad faith on the part of the defendant, and there is neither allegation nor proof of either.

[5] The court also adjudged that plaintiff is entitled to receive one-tenth of the capital stock of any corporation to which the defendant had conveyed any part of the lands, and a conveyance of an undivided one-tenth of any remaining lands, subject to said mortgage, upon payment by plaintiff of 10 per cent. of so much of the $10,000 cash paid by the defendant—

"as was paid for 65 per cent. of said lands and 10 per cent. of the actual costs and expenses necessarily incurred in the court proceedings in Oklahoma and reasonable in amount, provided, that defendant, simultaneously with such transfer of stock, conveyance, and payment, executes and delivers to plaintiff an instrument in writing and under seal whereby he shall obligate himself to hold plaintiff harmless from any loss he may sustain by reason of the mortgage for $17,000, given the Hellings executors, being unnecessarily in excess of the amount due and payable to them for 65 per cent. of such land."

In so far as the defendant is required to account to plaintiff for 10 per cent. of the capital stock of any corporation to which any of the lands have been conveyed, it is clearly sustained by the agreement; but the provision that such conveyance shall be upon payment by the plaintiff of only 10 per cent. of 65 per cent. of the $10,000 cash payment, is, I think, erroneous, for the entire title was acquired by the defendant, free from the Hellings equity, and not merely a 65 per cent. interest. As between the parties, the Hellings estate was not, where, as here, a sale was made of the property to satisfy its claim, under any obligation to contribute. If the purchase had been made by a third party, the Hellings estate would have retained no equity, and since it was not entitled to be reimbursed for the full amount by the coadventurers, it cannot, after having been thus fully reimbursed by them, claim an interest in the equity. In so far as the Hellings estate was concerned, the property was sold to satisfy its lien, and merely brought sufficient to discharge the lien. Of course, the plaintiff need not share in that part of the purchase representing the 35 per cent. Hellings interest, if he does not wish to; but he cannot take 10 per cent. of the lands *free from the Hellings equity* without bearing the burden of 10 per cent. of the Hellings claim for advances and disbursements.

As has been seen, after plaintiff contributed 10 per cent. of the Hellings advances and disbursements, and the others had contributed their shares, the Hellings interest would still hold an equity of 35 per cent. In so far as the plaintiff is required to pay only 10 per cent. of the actual costs and expenses, the interlocutory decree follows the construction of the contract which, as we have already indicated, is correct. The provision of the interlocutory judgment requiring the defendant, as a condition of receiving payment from the plaintiff of his proportionate share of the cash advanced, to execute and deliver

to the plaintiff an instrument obligating himself to hold the plaintiff harmless from any loss in the event that the mortgage to the Hellings executors should be found to be unnecessarily in excess of the amount due and payable to them for 65 per cent. of the lands, is, I think, erroneous, for the reason that, as already observed, that question is foreclosed by the judgment in Oklahoma.

The interlocutory judgment gives the plaintiff the privilege of electing to receive a conveyance of an undivided interest of 5 per cent. and $\frac{25}{65}$ of 1 per cent. of all the lands, subject to said mortgage, upon the payment of $\frac{10}{65}$ of such part of the cash payment of $10,000 made by defendant as was paid for the 35 per cent. interest in the lands owned by Hellings, provided that the plaintiff, simultaneously with the conveyance, executes and delivers to the defendant an instrument, in writing and under seal, obligating himself to hold the defendant harmless for any deficiency upon a foreclosure of the mortgage to the extent of $\frac{10}{65}$ of "so much of that mortgage as was necessitated and given by reason of the acquisition of said Hellings' interest." It was further adjudged that if the parties should fail within five days to agree upon an accounting, showing the amounts paid by Hellings in the purchase of the lands and the amounts received by him on a sale or lease thereof, and of the amounts paid to the executors of Hellings on account of his claim and for the purchase of his interest, "and of the actual terms of said settlement, and of the necessary and reasonable costs and disbursements incurred by the defendant" under the agreement of January 17, 1911, a referee therein named would be appointed to take and state an account of those matters. For the reasons already stated, the provisions by which an accounting is authorized in disregard of the judgment in Oklahoma is erroneous.

[6] The provisions of the interlocutory judgment, in so far as they gave plaintiff an election to take an interest in the purchase of Hellings' share in the same proportion that his interest bore to the interest of defendant prior to acquiring the Hellings interest, are proper, for the defendant, while representing himself and the plaintiff, having acquired the full title of the premises, including the Hellings equity, on payment therefor of merely the amount of Hellings' claim for advances and disbursements, could not appropriate the Hellings interest as his own without the consent of the plaintiff, his coadventurer; and this is so, even though plaintiff had consented that defendant might, on his own account, purchase the Hellings interest, for here nothing was paid over and above the amount of the Hellings lien for money advanced and disbursed. The plaintiff, therefore, may elect to share in the $\frac{35}{100}$ interest on the terms on which it was acquired by the defendant; and, if he shall so elect, the percentage or proportion specified in the interlocutory decree is correct, with the exception that, in the event of his so electing, he shall be required to contribute further to the costs and expenses incurred by defendant in the Oklahoma litigation proportionately.

It follows that the interlocutory judgment should be modified as herein indicated, and, as thus modified, affirmed, with costs to the appellant. All concur.

