[No. 14666. In Bank. — March 26, 1892.]

IN THE MATTER OF THE ESTATE OF THOMAS B. GROOME, DECEASED.

HOMESTEAD CLAIM — VOID CONTRACT FOR BENEFIT OF PARTNERSHIP — ILLEGALITY. — An agreement to file a homestead claim upon public land under the laws of the United States, and to obtain title thereto for the benefit of a partnership to which the applicant belongs, is in contravention of the spirit and policy of the law, and is illegal and void.

ID. — PAROL TRUST — TITLE OF PARTNERSHIP — SETTLEMENT OF ACCOUNTS. — A parol agreement by such applicant, after having acquired the title to the homestead upon a settlement of his accounts with the partnership, "that the land belonged to the partnership," does not create any trust, or vest in his partners any estate in the land.

ID. — APPARENT TITLE OF DECEDENT — SETTING APART OF PROBATE HOMESTEAD — QUESTION OF ADVERSE OWNERSHIP. — Where a homestead claimant had obtained a United States patent to the land in his own name, giving him the apparent title, and was residing upon it with his family at the time of his death, and it was inventoried and appraised as a part of his estate, the question of adverse ownership of the land by a partnership of which decedent was a member cannot be considered in a proceeding by the widow in the probate court to have the property selected, designated, and set apart as a home for the use of herself and minor child.

APPEAL from an order of the Superior Court of San Luis Obispo County denying a petition for the setting apart of a probate homestead, and from an order denying a new trial.

The facts are stated in the opinion.

*F. A. Dorn,* and *William Shipsey,* for Appellants.

*J. M. Wilcoxon,* and *Wilcoxon & Bouldin,* for Respondent.

BELCHER, C. — In July, 1886, Thomas B. Groome, under the homestead laws of the United States, filed a homestead claim upon 160 acres of public land in San Luis Obispo County. At the time of filing his claim, he was living on the land filed upon with his family, and continued to do so thereafter till he died. In 1887, he commuted his homestead, and paid the government for the land, and in December, 1890, a government patent

therefor was issued and delivered in his name. In May, 1890, he died intestate, leaving surviving him his widow, Julia Groome, and one daughter, then sixteen years of age. In August, 1890, letters of administration upon his estate were duly issued to his widow, who qualified and entered upon the discharge of her duties. In December, 1890, appraisers of the estate were duly appointed, and in May, 1891, an inventory and appraisement of all the property of the estate were made and returned to the court. This inventory included the 160 acres of land above mentioned, and the tract was appraised at the sum of eight hundred dollars, its then cash value. During his lifetime no homestead was ever selected by the decedent or his wife under the laws of this state. On May 29, 1891, the widow presented and filed in court her petition, alleging that at the time of his death her deceased husband was the owner of the said 160 acres of land, and that the same was then community property of herself and husband, and praying that the court make an order selecting, designating, and setting apart the said real property as a home for the use of herself and minor daughter.

To this petition one L. T. Almstead filed written opposition, and alleged therein "that the real property described in said petition was owned by and belonged to said deceased, this opponent, and one John Mintern, who were partners at the time said decedent died; that the same was and is now partnership property; . . . . that said decedent only had a five-sixteenths interest in said partnership"; wherefore he prayed that the prayer of the petition be not granted.

When the petition came on to be heard, the petitioner introduced her proofs, including the United States patent to her deceased husband, dated December 29, 1890, and rested. Almstead was then allowed, against the objection of petitioner, to testify as follows:—

"I know the land described in the petition in this proceeding. In the year 1884 it was public land of the United States. It was claimed by the Atlantic and Pa-

cific Railroad Company. Levi Sprague had possession and had a fence on about forty acres of it. I bought Sprague's right and possession. Shortly after that I formed a partnership with Thomas B. Groome, now deceased, and John Mintern, for the purpose of acquiring land and stock-raising. My interest in the partnership was eight sixteenths, Groome's five sixteenths, and Mintern's three sixteenths. I turned this land into the partnership, and we placed thereon the house, fencing, and other improvements now on the land. In the year 1886 we found out that the Atlantic and Pacific railroad had no right to the land, and we copartners then agreed that Groome should file on it under the United States homestead law and get the title for the benefit of the partnership, — the partnership to pay all expenses. Groome then moved onto the land, and in July, 1886, filed on it under the United States homestead law. In the year 1887 Groome commuted said homestead, and paid the government for the land out of the partnership funds, and he charged the money so paid to the partnership on the firm books; and thereafter, in settlement of our accounts, Groome agreed that the land belonged to the partnership. Since the year 1884 the partnership has used all of said land for partnership purposes, except the dwelling-house and buildings and garden. We cultivated a portion each year, and the remainder we used for pasture. Said partnership is solvent, having property of the value of about fifteen thousand dollars, and being indebted in the sum of fourteen hundred dollars."

The court found the facts to be as above set forth and as testified to by Almstead, and then, as a conclusion of law, found " that at the time of his death said Thomas B. Groome was not the owner of said land; that said land was not the community property of said deceased and his wife, Julia; that said Thomas B. Groome, at the time of his death, held the legal title to said land in trust for said partnership, composed of Almstead, Mintern, and Groome; and said partnership was then and is now the owner of

the equitable title to said land." An order was accordingly entered denying the prayer of the petition, from which, and from an order refusing a new trial, the petitioner appeals.

It is very clear, we think, that the rulings complained of were erroneous. Section 2290 of the Revised Statutes of the United States provides that a person applying for the benefit of the homestead law shall made affidavit before the register or receiver "that such application is made for his exclusive use and benefit, and that his entry is made for the purpose of actual settlement and cultivation, and not either directly or indirectly for the use or benefit of any other person."

If, therefore, Groome, before or at the time of making his application to file on the land, agreed with his partners to "file on it under the United States homestead law, and get the title for the benefit of the partnership," the agreement was in contravention of the spirit and policy of the law, and hence illegal and void. (*Kreamer* v. *Earl*, 91 Cal. 112.) And if, after Groome acquired the title, he made a parol agreement, in settlement of the accounts, "that the land belonged to the partnership," such agreement did not create any trust, or vest in his partners any estate in the land. (Civ. Code, sec. 852.)

Again, as the decedent had the apparent legal title to the land, and was residing on it at the time of his death, and it was inventoried and appraised as a part of his estate, the question of adverse ownership could not be considered in a proceeding like this, but must be tried and determined in another forum. (*Estate of Burton*, 63 Cal. 36; 64 Cal. 428.)

We advise that the orders appealed from be reversed, and the cause remanded for further proceedings.

Vanclief, C., and Temple, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the orders appealed from are reversed, and the cause remanded for further proceedings.