[Civ. No. 2443.   Third Appellate District.—May 22, 1922.]

## J. D. MARTIN, Respondent, v. GEORGE B. BURRIS, Appellant.

[1] JOINT ADVENTURE — CANCELLATION OF CONTRACT—SETTLEMENT OF PROPERTY RIGHTS—DUTY OF COURT.—Where in an action for the cancellation of a contract of joint adventure the pleadings raise the issue of property rights acquired under the contract, the judgment should determine them instead of merely canceling the contract and leaving the rights of the parties open for future litigation.

[2] ID. — JUDGMENT OF CANCELLATION — SUFFICIENCY OF EVIDENCE — FAILURE TO DETERMINE PROPERTY RIGHTS — APPEAL — TRIAL OF

---

1. Mutual rights and liabilities of parties to joint adventures, notes, 17 Ann. Cas. 1022; Ann. Cas. 1912C, 202; Ann. Cas. 1914C, 691; Ann. Cas. 1916A, 1210.

SINGLE ISSUE.—Where a judgment canceling a contract of joint adventure is supported by the evidence, but no determination is made therein of the issue of the rights of the parties in the property acquired under the contract, it is not necessary that the judgment be reversed, but it is proper that the trial court be directed to hear and determine such issue.

APPEAL from a judgment of the Superior Court of Mono County. Pat R. Parker, Judge. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

Welles Whitmore for Appellant.

John D. Murphey for Respondent.

FINCH, P. J.—The complaint alleges the execution of a contract on November 17, 1916, by the terms of which the parties associated "themselves together for the purpose of acquiring, disposing of and working mining properties in the Masonic Mining District in the County of Mono"; that certain mining properties were acquired pursuant to the agreement; that the plaintiff performed all the terms of the agreement on his part; that the defendant failed to perform any of the terms thereof and endeavored to prevent performance by plaintiff, to plaintiff's damage in the sum of $10,000; that on the twenty-ninth day of June, 1918, plaintiff rescinded the contract and declared the same to be ended and terminated and duly notified defendant of such rescission and termination. Plaintiff prayed for judgment for damages in the sum of $10,000; for the rescission, cancellation, and annulment of the contract; for the forfeiture of defendant's rights thereunder and of all his rights in and to the properties acquired by plaintiff under the agreement and adjudging plaintiff to be the owner thereof, and for general relief.

The defendant demurred to the complaint on various grounds and the court overruled his demurrer. The principal grounds urged on appeal against the complaint are that it does not state a cause of action for rescission and that several causes of action are improperly joined in one count. It may be doubted whether the complaint attempts

to state a cause of action for the rescission of the contract in the statutory sense of that term. It clearly states a cause of action, however, for the cancellation of the contract. (Civ. Code, sec. 3412; *Bradley* v. *Anglo-American Gas Control Co.*, 102 Cal. 627 [36 Pac. 1011].) The relief prayed for does not have the effect of making the complaint state independent causes of action. On canceling the contract it is proper for the court to determine the rights and obligations of the parties thereunder and their interests in the properties acquired prior to its termination.

In his answer the defendant denies the alleged failure of performance and wrongful conduct on his part and alleges failure of performance by plaintiff and prays for damages and general relief.

The decree, among other things, adjudges that the contract was, on the twenty-ninth day of June, 1918, "fully rescinded, canceled and terminated and was thereafter of no further force and effect." There was no evidence as to the amount of damages, if any, suffered by either party and the court declined to make any finding on the question. The court did not adjudge the rights and obligations of the parties relative to the properties acquired under the contract by either party prior to plaintiff's termination thereof on June 29, 1918.

In his brief appellant says: "The judgment in this case rescinds the contract, at an arbitrary date, but does not determine the rights of the parties. It opens the way for much future litigation, by setting a post around which litigation may revolve." The notice of June 29, 1918, referred to in the complaint and in the transcript of the evidence as a notice of rescission is not such in fact. The notice does not contain the word "rescind" or any equivalent term but provides: "You are hereby notified that . . . the undersigned hereby declares said contract terminated and all of your rights thereunder forfeited." By the decree it is adjudged that the contract was by the plaintiff "rescinded, canceled and terminated and was thereafter of no further force and effect." Construing the word "rescinded" as used in the complaint and in the decree, with reference to the context, it seems clear that the word was not used to indicate a statutory rescission, but rather a cancellation or termination of the contract. (*Pfeiffer* v.

*Norman,* 22 N. D. 168 [38 L. R. A. (N. S.) 891, 133 N. W. 97].) On sufficient evidence, the court found that the defendant had broken his agreement in such material respects as to justify the termination thereof by the plaintiff on June 29, 1918. The defendant had failed to repay plaintiff the sums advanced by the latter in the former's behalf, as provided for by the contract. He had failed to pay his proportion of the installments which had become due on certain options. He had refused to convey to plaintiff many mining claims located by defendant. He had entered into an agreement to purchase a one-half interest in the Chemung claim and refused to convey the same to plaintiff, but had conveyed his interest therein to another. He had, however, rendered valuable services in securing other options and in managing the operation of some of the properties acquired. Whether the joint enterprise constituted a partnership or a joint adventure, the defendant's breach of the agreement justified the plaintiff's termination thereof, but did not work a forfeiture, except as provided by the contract, of his interest in the assets acquired prior to the notice of termination. (*Kimball* v. *Gearhart,* 12 Cal. 28, 48; *Lanpher* v. *Warshauer,* 28 Cal. App. 457 [152 Pac. 933]; *McDonough* v. *Saunders,* 201 Ala. 321, [11 A. L. R. 419, 78 South. 160]; *Parish* v. *Bainum,* 202 Ill. App. 563; *Iman* v. *Inkster,* 90 Neb. 704 [134 N. W. 265]; *Botsford* v. *Van Riper,* 33 Nev. 191 [110 Pac. 705]; *First Nat. Bank* v. *Rush* (Tex. Com. App.), 210 S. W. 521; *Kaufman* v. *Catzen,* 81 W. Va. 1 [L. R. A. 1918B, 672, 94 S. E. 388].)

The contract provides for the forfeiture of defendant's interest in certain properties on default by him in the payment of his proportion of the purchase price thereof. It is recited therein that options had been taken in the defendant's name for the purchase of a one-half interest in the Red Rock claim, a two-thirds interest in the Lake View, and the entire interest in the Perini claims. There is evidence to the effect that the option on the Perini claims was allowed to lapse by mutual consent and it need be given no further consideration. The plaintiff advanced the initial payment on the other options and defendant in the contract agreed to repay plaintiff one-fourth of the sum so advanced within ninety days after the execution of the

agreement. The contract further provided that plaintiff should pay three-fourths and the defendant one-fourth of the deferred installments as they became due, their interests in the property to be in the same proportion. Relative to the foregoing options, but not as to other options to be acquired, the contract provided: "That in the event of either of the parties hereto failing to make any payment upon any option or agreement to purchase at the time and place specified therefor in said agreements or any agreement hereafter to be made in reference thereto, in that event the other party is hereby authorized to make such payment and shall succeed to all the right, title and interest of every kind and character of the delinquent party of in and to the properties named in any of said options which shall have become delinquent by reason of the nonpayment of any installments thereon." Manifestly, this provision was not intended to apply to failure of repayment to plaintiff of the sums advanced by him toward the purchase of the claims mentioned prior to the execution of the contract. It is, by its terms, limited to "any payment upon any option or agreement to purchase at the time and place specified therefor in said agreements," and, of course, defendant's obligation to repay plaintiff for such advances is not specified in such options or agreements to purchase. "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." (Civ. Code, sec. 1442.) "A forfeiture can never take place by implication, but must be effected by express, unambiguous language." (*Cullen* v. *Sprigg*, 83 Cal. 56, 64 [23 Pac. 222].)

The defendant failed to pay any part of the deferred installments which became due on the Red Rock option and the plaintiff paid $1,000 on the first deferred installment and made a new arrangement with the owners for subsequent payments. The evidence seems to justify the conclusion that by such failure the defendant forfeited his interest in the Red Rock claim.

The evidence does not show that either party made payment of any deferred installment of the purchase price of the Lake View claim. Under such circumstances, the defendant did not forfeit his interest therein.

As to other properties to be acquired, the contract provided "that any and all property situate in said Masonic Mining District, secured by either the party of the first part or the party of the second part hereto or in the name of any other person whatever through the instrumentality of the parties hereto and for the benefit of either of them, except as hereinbefore provided, shall be the property of the parties hereto and the ownership of the same shall be in the following proportions, to wit: three-fourths interest in and to all such property shall belong to said party of the first part herein, J. D. Martin, and one-fourth interest in and to all such property shall belong to the party of the second part herein, George B. Burris." The contract further provided that all options and purchases secured by the defendant should be taken in his name but that he should transfer them to plaintiff, who should "have the sole and entire management of said properties." The contract provided that the plaintiff would advance the money necessary to pay for such options and "purchases negotiated" by defendant as might meet with the plaintiff's approval, the defendant to repay plaintiff one-fourth thereof, but such repayments to be made "only out of the profits arising or accruing from the properties secured to said parties by reason of this agreement."

In September, 1917, the plaintiff purchased the Atlanta and January claims for the sum of $600 and took a deed therefor in his own name.

Operating under the contract, and apparently by the efforts of both parties, in December, 1916, an option was secured in the name of plaintiff from Mox Smith for the purchase of the Snowshoe and other mining claims. Plaintiff paid Smith $250 on the execution of the option. The option contract recited that plaintiff was then the owner of the New York mining location in Masonic district and provided that as soon as "possible and practicable" the plaintiff was to "commence the operation of said mine for the purpose of developing, surveying, excavating, mining and milling the ore bodies contained therein and will prosecute said work diligently and expeditiously," and that if, "prior to August 1, 1917, ore shall be discovered and exposed or blocked out in said New York Mine or Mining Location, the assayed value of which in the aggre-

gate tonnage shall exceed, after deducting the reasonable cost of mining and milling ores in said Masonic District, the sum of fifteen hundred dollars, . . . then and in that event'' plaintiff was to pay Smith $1,500 on August 1, 1917; and that like payments under similar conditions were to be made every six months up to August 1, 1919, at which time the remainder of the purchase price was to be paid. Plaintiff testified: ''This Mox Smith agreement-contract was made after the contract between me and Mr. Burris and was under the agreement. . . . Part of the consideration for Mox Smith giving the option was that I was to go to work on the New York.'' Plaintiff expended about $12,000 pursuant to the terms of the option contract. The defendant was an experienced miner while plaintiff was not. The plaintiff testified that he followed the defendant's advice in working the New York claim and that the defendant worked there ''thirty or forty or fifty or sixty days''; that ''he went up there some time in December, 1916,'' and ''ceased his superintendency, or ceased work on the New York . . . about March, 1917.'' There is no evidence that defendant failed to perform any of the terms of the contract applicable to the Mox Smith option. No returns were received from the operation of the New York or from any properties acquired under the contract between the parties hereto.

Mox Smith died and on the ninth day of December, 1918, the plaintiff entered into an agreement with the administrator of the Smith estate by the terms of which the original option was annulled and canceled, the purchase price reduced, a half interest in the property recognized to be in a third person, and an option given plaintiff to purchase the other half interest. Relative to this second agreement the court found ''that the plaintiff had entered into a new and modified contract with the administrator of the estate of Mox Smith, deceased, and that in this respect the plaintiff was working wholly within the terms of the contract of November 17, 1916.''

Notwithstanding plaintiff's testimony as to defendant's services in connection with the Mox Smith option, the court found that defendant had failed to perform any of the terms and conditions of the Smith option or of the contract of November 17, 1916, and had forfeited all ''right

or interest'' in the option and the property described therein. The decree adjudges "that neither of the parties to this action has any right, title or interest in and to any property acquired by the other by reason of said contract or agreement since said twenty-ninth day of June, 1918.'' Construing this provision of the decree in the light of the finding that the plaintiff "entered into a new and modified contract with the administrator of the estate of Mox Smith, deceased,'' as to the purchase of the property described in the original option and the further finding, or conclusion, that defendant had forfeited all his rights in and to such property, it may be said that defendant's rights in such property are adjudged to be forfeited. It does not appear upon what theory this provision in the decree can be sustained.

It seems that the Chemung location overlaps that of the Snowshoe and that, after defendant had acquired a half interest in the former, he caused it to be conveyed to a third person and included in the conveyance the overlapping strip between the disputed boundary lines. This act, however wrongful, did not, under the authorities cited, work a forfeiture of his interest in the Snowshoe and other claims embraced in the Smith group.

[1] In any case in which a contract of joint adventure is canceled after property has been acquired thereunder, it is eminently proper to adjudicate the rights of the parties in the property so acquired. In this case the pleadings raised the issue of property rights under the contract and the judgment should determine them instead of leaving the question open for future litigation. The defendant is not entitled, of course, to a one-fourth interest in the properties acquired, freed from the obligations assumed by him in his contract with the plaintiff, but his interest in the assets of the venture is burdened by such obligations. In the settlement he must be charged with the sums due the plaintiff for advances made and for the value of plaintiff's interest in any properties wrongfully transferred by defendant to persons other than plaintiff. As said in *Berg* v. *Mead,* 115 App. Div. 288 [100 N. Y. Supp. 792], the court should take "a general accounting of all transactions between the parties to the agreement, so that in one proceeding there could be a final accounting and winding up of the affairs

of the joint adventure." "A joint adventure . . . is similar to a partnership, and, being of a similar nature, the right to an accounting of profits in accordance with the agreement therefor and the obligations growing out of such agreement between the parties are governed by the same rules of law. . . . Whether the parties were technically partners or not, an accounting was necessary to determine their respective rights." (*Butler* v. *Union Trust · Co.*, 178 Cal. 195, 198 [172 Pac. 601, 602]. See, also, *Keyes* v. *Nims*, 43 Cal. App. 1 [184 Pac. ·695]; *Jackson* v. *Hooper*, 76 N. J. Eq. 185 [74 Atl. 130]; *Hedges* v. *Mountjoy*, 164 App. Div. 444 [149 N. Y. Supp. 869]; *Saunders* v. *McDonough*, 191 Ala. 119 [67 South. 591].) As in the case of the dissolution of a partnership, if the assets cannot be equitably divided, or if for any other reason it becomes necessary to a proper adjustment of the rights of the parties, the property acquired, prior to the termination of the contract by the plaintiff's notice thereof, should be sold and the net proceeds distributed in accordance with the interests of the parties.

Since special provision is made in the contract for the forfeiture of the interests of either party in the Red Rock, Lake View, and Perini claims in the event of specified defaults, if it be found that any such default has occurred in relation to any one of such claims the decree should so adjudge.

October 31, 1917, after the defendant had acquired and transferred to other persons an interest in the Chemung and other claims, a notice was executed by plaintiff and served on defendant and recorded in the office of the county recorder of Mono County, by which notice plaintiff claimed an interest under the contract of November 17, 1916, in the property so acquired and transferred by defendant. It is argued by appellant that, since all of his breaches of the contract had been made prior to October 31, 1917, the plaintiff is estopped by the notice from thereafter terminating the contract. It is not perceived that any element of an estoppel is shown by such notice. If the plaintiff was entitled to an interest in such claims at the time they were acquired by defendant, then, as between the parties, his interest therein still exists, notwithstanding the cancellation of the contract, and the position assumed

by the plaintiff in his notice of claim to the property is in nowise inconsistent with that taken at the trial or in the notice of cancellation. The cancellation of the contract did not in any manner affect the rights of either party in the assets theretofore acquired. As to the other grounds urged for a reversal, it is sufficient to say that they are without substantial merit.

[2] "No good reason appears why the new trial that must be had should not be limited to the matters in regard to which error has been shown. . . . It is a plain duty of appellate courts to facilitate to the extent of their capacity as speedy a disposition of litigation as is consistent with the doing of complete justice between the parties." (*Collins* v. *Ramish,* 182 Cal. 360, 368 [188 Pac. 550, 553]; *Rudneck* v. *Southern California Metal & Rubber Co.,* 184 Cal. 274 [193 Pac. 775].) The judgment canceling and terminating the contract between the parties as of the date of June 29, 1918, is not only supported by the evidence, but it does not appear on what evidence the court could have decided otherwise.

That part of the judgment adjudging and decreeing that the agreement of November 17, 1916, was on the twenty-ninth day of June, 1918, canceled and terminated is affirmed. In other respects the judgment is reversed, with directions to the trial court to try the other issues raised by the pleadings and adjudicate the rights of the parties in and to any and all property in which the parties acquired an interest under the agreement of November 17, 1916, prior to June 29, 1918.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 20, 1922.

All the Justices concurred, except Wilbur, J., and Lennon, J., who were absent.

Shurtleff, J., was also absent and Richards, J., *pro tem.,* was acting.