[Civ. No. 13376.   First Dist., Div. One.   Sept. 24, 1947.]

FRED A. HOOPER, as Special Administrator, etc., Plaintiff and Appellant, v. JOSEPH P. BARRANTI, Defendant and Appellant; IGNATIUS BARRANTI, Intervener and Appellant.

Eugene H. O'Donnell and Ralph Bancroft for Plaintiff and Appellant.

Roy A. Sharff, John Shortridge and Jack K. Berman for Intervener and Appellant.

OGDEN, J. pro tem.—Fred E. Hooper was the sole owner and operator of an on-sale retail liquor tavern business under a license issued in his name. He entered into a verbal agreement, confirmed shortly thereafter by a written agreement, of association with Joseph P. Barranti whereby they agreed to become equal partners in the operation of the business. Barranti agreed to pay to Hooper the sum of $1,500 for a one-half interest in the business at the rate of $100 per month. It was agreed that the on-sale liquor license, under which the business had been operated by Hooper and under which it was to be operated by the partnership, should remain in the name of Hooper until the payments were completed, at which time it was to be transferred to the names of both partners. The assets of the business, consisting of all fixtures, furnishings and stock in trade, were, under the terms of the agreement, to become partnership assets immediately, but the

on-sale liquor license was not to become a partnership asset until the $1,500 was paid in full. It was further agreed that the active conduct of the business was to be undertaken by Barranti.

The business was conducted under the management of Barranti for shortly over one year when Hooper gave notice of rescission on the ground that Barranti was not a citizen of the United States. Shortly thereafter, Hooper forcibly ejected Barranti from the premises and excluded him from further participation in the business. Barranti, who admittedly was and is not a citizen, later assigned his interest in the business and in anything that might accrue to him under the agreement to his brother, Ignatius Barranti, who was a citizen of the United States. The latter's offer to participate further in the business was likewise refused by Hooper, although he accepted from him the final payments due under the agreement.

Hooper brought an action to declare the dissolution of the partnership and for an accounting. Ignatius Barranti filed a complaint in intervention, setting forth his assignment and asserting ownership in one-half of the assets of the business, including the on-sale license. Hooper thereupon dismissed his action to declare a dissolution, and for an accounting, and demurred generally to and answered the complaint in intervention, alleging by way of defense the illegality of the agreement. Upon the issues raised by these pleadings the cause proceeded to trial. It was stipulated that there were no outstanding debts of the business and an accounting of any profits resulting from its continued operation by Hooper was waived.

The trial court made written findings of fact and conclusions of law to the effect that the agreement was one of partnership; that the partnership was dissolved by reason of the exclusion of Joseph Barranti from the business. It found the assets of the partnership to be the fixtures, furnishings and stock in trade as of the date of dissolution, certain moneys in a joint bank account and the liquor license standing in the name of Hooper. Judgment was rendered that Ignatius Barranti, by virtue of his assignment, is the owner of and entitled to an undivided one-half interest in those assets, excepting the liquor license. The court refused to determine any issue between the parties pertaining to the liquor license on the ground that the agreement was void as contrary to public policy insofar as it pertained thereto.

574

During the course of the trial Fred E. Hooper died and Fred A. Hooper, the administrator of his estate, was substituted in his stead. He appeals from the judgment, except those portions thereof which decree the invalidity of the agreement insofar as it pertains to the liquor license. Both Joseph and Ignatius Barranti join in an appeal from those last-mentioned portions of the judgment which are excepted from the appeal of Hooper.

They also purport to appeal from an order denying their motion, made after the rendition of judgment, to reopen the case for further testimony. This they have apparently, and rightly so, abandoned, for no mention thereof is made in their briefs. It is elementary that after judgment, a review of a question of fact can be had only upon motion for new trial. (20 Cal.Jur. 13.) The record discloses no such motion. The purported appeal from the order denying the motion to reopen is dismissed.

The appeal of Joseph Barranti from the judgment is also dismissed. He ceased to be a party to the original action for dissolution and accounting upon the dismissal thereof by Hooper. His answer thereto asked for no affirmative relief and he did not answer the complaint in intervention of Ignatius Barranti. He is not before the court as to the issues raised thereby.

The principal question involved in these appeals, the determination of which must finally dispose of this litigation, is whether the agreement of partnership and the conduct of the parties pursuant to it requires the court to refuse any relief because of illegality of its purpose and effect.

The general rule is that a void contract, a contract against public policy or against the mandate of a statute, may not be made the foundation of any action, either in law or in equity. (*In re Groome*, 94 Cal. 69 [29 P. 487]; *Chateau* v. *Single*, 114 Cal. 91 [45 P. 1015, 55 Am.St.Rep. 63, 33 L.R.A. 750]; *Moore* v. *Moore*, 130 Cal. 110 [62 P. 294, 80 Am.St.Rep. 78].) As stated in Lindley on Partnership, ninth edition, page 141: "The most important consequence, however, of illegality in a contract of partnership is, that the members of the partnership have no remedy against each other for contribution or apportionment in respect of the partnership dealings and transactions. However ungracious and morally reprehensible it may be for a person who has been engaged with another in various dealings and transactions

to set up their illegality as a defense to a claim by that other, for an account and payment of his share of the profits made thereby, such a defense must be allowed to prevail in a court of justice. Were it not so, those who—*ex hypothesi*—have been guilty of a breach of the law, would obtain the aid of the law in enforcing demands arising out of that very breach; and not only would all laws be infringed with impunity, but, what is worse, their very infringement would become a ground for obtaining relief from those whose business it is to enforce them.''

The validity of the agreement is attacked by Hooper principally because it contemplates the transfer of the on-sale license to a partnership, ineligible, under section 12 of the Alcoholic Beverage Control Act (Stats. 1935, p. 1123, as amended, 2 Deering's Gen. Laws, Act 3796) to receive it due to the noncitizenship of Barranti. The latter contends that the agreement is valid in this respect because it merely provided for the transfer of the license at a future time, when, it was contemplated by both parties, Barranti would have attained his citizenship.

There appears, however, on the face of the agreement itself, a more serious fault. It contemplated (and the parties pursuant to it executed that contemplation) the conducting by a partnership of an on-sale retail liquor business at least for a period of 15 months without a license therefor. The license held by Hooper was issued to him as an individual and did not license him as a partner, nor the partnership, to conduct the business. Section 7 of the Alcoholic Beverage Control Act provides that each license shall be issued to a specific person, and in section 2 of the act the term ''person'' is defined to include a copartnership. Section 10 requires that in the case of a partnership the application for license must be signed by each of the partners.

*Denning* v. *Taber,* 70 Cal.App.2d 253 [160 P.2d 900), although applying an exception to the general rule applicable to illegal contracts, recognized that a saloon business, conducted by a partnership under a license issued in the name of one partner only, was illegally conducted so as ordinarily to require the court to refuse, upon the ground of public policy, to determine issues between the partners regarding the division of, or the title to, the assets of the business.

*Wise* v. *Radis,* 74 Cal.App. 765 [242 P. 90], involved an agreement between two real estate brokers pursuant to which

they worked together as brokers in negotiating the purchase and sale of real properties and were to divide equally all profits and losses made or incurred by them in each deal. Radis refused to divide a commission received as a result of their joint efforts. No broker's license was applied for or issued in the name of the partnership and at the time of the transaction, out of which the commission was paid, Wise had allowed his license to lapse. Although not deciding whether a copartnership license was necessary under the facts of that case, it was held that no relief could be afforded, the court saying (p. 778): "... whether the partnership contract be regarded as illegal from the beginning because of the failure of the joint adventurers to take out a partnership license, or whether it became illegal ... by reason of respondent's failure to maintain his status as a duly licensed real estate broker, in either case the action must be regarded as one to enforce an illegal contract."

To the same effect is the case of *Fewel & Dawes, Inc.* v. *Pratt,* 17 Cal.2d 85 [109 P.2d 650], holding that an unlicensed person could not enforce a contract between himself and a licensed broker to divide commissions on insurance business.

The rule was but recently applied, and with more harshness than here, in *Loving & Evans* v. *Blick,* ▮ (Cal.App.) 177 P.2d 981. In that case recovery was denied to a partnership engaged in the contracting business for work performed in the remodeling and repair of appellant's premises because it held no partnership license, but operated under a license issued in the name of one partner only.

▮ The test whether a demand connected with an illegal transaction is capable of being enforced is whether the plaintiff requires the aid of the illegal transaction to establish his case. If the plaintiff cannot establish his case without showing that he has broken the law, the court will not assist him, whatever his claim in justice may be upon the defendant. (*Moore* v. *Moore, supra; Wise* v. *Radis, supra; Loving & Evans* v. *Blick, supra.*)

In *Denning* v. *Taber, supra,* the court applied what it referred to as a well-recognized exception to the general rule, but which perhaps more accurately stated was merely the application of the above test. It states the so-called exception

as follows (p. 257) : ''When a business, which has been illegally conducted for lack of license, as distinguished from an unlawful and forbidden enterprise, has been completely terminated and one of the parties subsequently expressly agrees to divide in a specified manner the assets in his possession, courts will entertain suits for accounting, in assumpsit, or based on an implied trust, to recover the property belonging to the claimant.'' The case of *Wise* v. *Radis, supra,* was distinguished because it did not involve a termination of the business by voluntary action, or a subsequent agreement to divide the proceeds, and emphasis was placed upon the fact that the plaintiff there was not *in pari delicto*.

*Denning* v. *Taber, supra,* is distinguishable from the case before us in the same respects that were there pointed out as differing from *Wise* v. *Radis, supra.* In the Denning case the license was secured by the defendant in his own and not the partnership name by his fraud and in violation of their agreement. Because of differences arising out of that fact the parties voluntarily terminated the partnership and the defendant expressly agreed with the plaintiff to divide the assets thereof equally with him. The basis of the decision was that the right of the plaintiff for an accounting of the assets did not necessarily involve the legality of the saloon business, but depended upon the oral agreement to divide the property after the voluntary termination of the business without the aid of court.

The parties here were *in pari delicto*. The partner Barranti testified that the reason why the agreement delayed the time for the transfer of the license to the partnership was because it could not lawfully be transferred sooner. That he may have been, in good faith, of the opinion that he would within the 15-month period attain his citizenship because married to a citizen, does not alter the fact that he knew that at all times the partnership was conducting the business, and that neither it, nor he individually, was qualified to receive or had received a license therefor. The partnership here was not terminated by mutual consent nor was there any subsequent agreement to account for or divide the assets.

We cannot escape the conclusion that this case is one where, in order to establish his claim, Barranti must rely upon the illegal transaction and agreement and ask for its enforcement. It cannot be considered one merely to establish title to property acquired under a fully executed, though illegal, contract within the rule of such cases as *Wayman Inv. Co.* v. *Wessinger,* 13

Call.App. 108 [108 P. 1022] and *Wagner* v. *Worrell,* 76 Cal. App.2d 172 [172 P.2d 751]. This being so, the court cannot aid him, but must leave him as he was.

■ There is no merit in the contention of Barranti that the agreement was not one of partnership but rather one merely for the sale and purchase of one-half of the assets of the business and the employment of Joseph Barranti as manager. The conclusion of the trial court that the agreement and the relation of the parties thereto were that of partnership is amply and the only one that could be supported by the record. The written agreement expressly states that such is the contemplated relation and contains the usual and typical provisions of agreements of partnership relating to accounting for and division of net profits and procedures upon voluntary dissolution. Although it does not expressly refer to a sharing of possible losses, a reading of the entire document clearly discloses that intent.

The assets formerly owned by Hooper alone were, under the agreement, to become assets, not of the individual partners in undivided interests, but rather assets of the partnership. The ownership of Barranti was only by virtue of and through his interest in the partnership and was that of a tenant in partnership. (Civ. Code, § 2419.) The measure of his beneficial interest in those assets was the balance coming to him after payment of the partnership debts, if any, and the settlement of the accounts with his partner. ■ Until the affairs of a copartnership are wound up and settled, the claim of one partner is, strictly speaking, merely equitable as it can be enforced only through an equitable action for an accounting. (20 Cal.Jur. §35, pp. 717-718.)

■ The general rule is that a personal judgment cannot be entered against a partner in a suit for accounting and settlement until all the partnership assets have been converted into money, the debts paid and a final balance ascertained. (20 Cal.Jur. 847 and the many authorities cited therein.) The Uniform Partnership Act provides, in section 2432 of the Civil Code, for the payment *in cash* of the net amount owing to the partners upon dissolution. ■ There has been recognized an exception to the general rule requiring a sale of the assets, where there are no debts and a division in kind may be fairly and equitably made. (*Harper* v. *Lamping,* 33 Cal. 641; *Shuken* v. *Cohen,* 179 Cal. 279 [176 P. 447]; *Martin* v. *Burris,* 57 Cal.App. 739 [208 P. 174]; *Watterson* v. *Knapp,* 35 Cal.App.2d 283 [95 P.2d 154]; *Swarthout* v. *Gentry,* 62

Cal.App.2d 68 [144 P.2d 38].) This exception, however, does not, even where applicable, obviate the necessity of an accounting and complete winding up of the affairs of a partnership as a prerequisite to the right of a partner to receive his share of the partnership assets upon dissolution.

The partner Barranti could therefore assert no claim or right to receive any of the assets of the partnership except through the partnership and an accounting of its affairs. His ownership of those assets being that of a tenant in partnership it cannot be established without the aid of the partnership agreement. That agreement being illegal from its inception, he is without that aid. This must apply with equal force to all of the assets, including whatever interest the partnership may have had in the license standing in the name of Hooper. It is not necessary therefore to here consider what that interest might have been except for the illegality of the partnership agreement. The authorities relied upon by the appellant Barranti which uphold the validity of contracts to perform acts in the future when legal to do them are not in point.

The appellant Barranti as the assignee of his brother's interest in the partnership can be in no better position than was his assignor. The assignee of a partner is entitled only to those remedies for the settlement of the partnership affairs that existed in favor of his assignor. (*Miller* v. *Brigham*, 50 Cal. 615.) The fact that he is a citizen is immaterial.

The judgment, insofar as it refuses to determine ownership of the on-sale license issued in the name of Hooper is affirmed. All other portions of the judgment are reversed, Fred A. Hooper to recover costs on appeal.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied October 24, 1947, and the following opinion then rendered:

THE COURT.—On this petition for rehearing petitioner contends among other things, that this court has granted affirmative relief to the estate of Hooper, at least as to the bank account. The opinion does not have that effect. The opinion notes that the bank account is a "joint bank account." The legal effect of the reversal is to leave the parties in exactly the position where they were before suit was filed. As to the bank account, if it was a joint bank account before suit was filed, it remains a joint bank account now.