[Civ. Nos. 31151, 30953. First Dist., Div. Four. Mar. 1, 1973.]

RICHARD L. BRADLEY, Plaintiff and Appellant, v.
JAMES D. DOHERTY et al., Defendants and Respondents.

(Consolidated Appeals.)

## COUNSEL

Ephraim Margolin and Truce, Veal & Jackson for Plaintiff and Appellant.

Ropers, Majeski, Kohn, Bentley & Wagner and Michael J. Brady for Defendants and Respondents.

## OPINION

**BRAY, J.**\*—Plaintiff appeals from two separate but related orders of the San Mateo County Superior Court: (1) judgment sustaining demurrer without leave to amend the fifth cause of action (1/Civil 31151), and (2) order dissolving temporary injunction and denying plaintiff's motion for preliminary injunction (1/Civil 30953).

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

QUESTION PRESENTED

*Is the doctrine of* in pari delicto *unconstitutional when applied to an action to recover money lost in "fixed" gambling?*

RECORD

Appellant's complaint contains nine causes of action. The first cause of action alleges that respondents operated a cocktail lounge and bar known as the Orchid Room in a negligent manner, in that they knowingly allowed "latent defects to exist on the premises" whereby appellant was damaged in the sum of $70,000. The second cause of action alleges that respondents were negligent and careless in the operation and conduct of the Orchid Room business, causing damage to appellant's property. The third cause of action alleges that respondents so negligently, wilfully and wantonly misconducted themselves in failing to properly supervise, conduct and operate respondents' business as to cause damage to plaintiff's property. The fourth cause of action alleges facts to show that the corporate respondent is the *alter ego* of the individual respondent. The fifth cause of action alleges that respondents fraudulently obtained $70,000 from appellant by "betting on sides or hands of various plays or games." The sixth cause of action alleges that appellant was induced to join in the games by the misrepresentation that the games were ones of skill and chance. The seventh cause of action alleges that defendant Kathleen E. Doherty converted $6,440 for her own use. The eighth cause of action alleges that Does XV through XX converted to their own use $25,725. The ninth cause of action alleges that respondents maliciously and wilfully entered into a scheme to defraud appellant by the use of "fixed, rigged and manipulated games" and did defraud appellant to his damage in the sum of $70,000.

Respondents filed general and special demurrers to the complaint. The special demurrers were sustained. The court reserved ruling on the general demurrer until the complaint was amended. Appellant filed an amended complaint containing approximately the same allegations as the original complaint plus an allegation that the latent defects that respondents knowingly permitted at the Orchid Room consisted of "hidden electronic, magnetic and sonic devices used for the purpose of controlling and manipulating various games played in the lounge . . ." General and special demurrers were filed to the amended complaint, based on much the same grounds as the demurrers to the original complaint. Respondents also moved to strike the amended complaint on the grounds that each cause of action except the first is redundant and a sham. This motion was denied.

The special demurrers and the general demurrers to all counts except the fifth were overruled.

Appellant moved for the appointment of a receiver on the ground that the "property"[1] which is the subject of this action is "in danger of being lost or materially injured," that is, that he fears that respondents will dissipate their assets and any judgment he might obtain would be uncollectible. This motion was denied. Then appellant applied for a preliminary injunction restraining respondents from disbursing the proceeds of a pending sale of the Orchid Room and accompanying liquor license so that there will be assets to pay his expected judgment. The court dissolved a temporary restraining order which it had issued and denied the petition for a preliminary injunction.

> *The sustaining of the demurrer to the fifth cause of action without leave to amend was proper.*

The court sustained the demurrer on the ground that the allegations of the fifth count showed that appellant was attempting to collect $70,000 which he had lost in betting on the outcome of pinball games, that appellant was *in pari delicto* and that, under California law, as betting is illegal, one engaged in betting cannot recover his losses even though the gambling game is fixed and crooked. Appellant concedes that such is the law in this state but contends that the doctrine of *in pari delicto* should be held unconstitutional if applied to a gambling game which is fixed, or to a compulsive gambler.

"The general rule is that the courts will not recognize such an illegal contract [betting] and will not aid the parties thereto, but will leave them where it finds them. This rule has been rigidly enforced in this state to deny any relief in the courts to parties seeking to recover either their stakes or their winnings under a wagering contract which is in violation of law, . . . [Citations.]" (*Kyne* v. *Kyne* (1940) 16 Cal.2d 436, 438 [106 P.2d 620]; accord, *Union Collection Co.* v. *Buckman* (1907) 150 Cal. 159, 165 [88 P. 708]; *Matthews* v. *Lopus* (1914) 24 Cal.App. 63, 67 [140 P. 306].) The rule applies even though the winner wins the gambling by fraud or deceit. (*Abbe* v. *Marr* (1859) 14 Cal. 210, 211.)

In *Wallace* v. *Opinham* (1946) 73 Cal.App.2d 25 [165 P.2d 709], a demurrer was properly sustained to a complaint alleging that the plaintiff was cheated out of a sum of money when his opponents in a card game of

---

[1] By "property" appellant means the assets of the Orchid Room from which appellant hoped to collect any judgment he might obtain.

"Twenty-One" used marked cards, the court refusing to aid or assist plaintiff to enforce rights growing out of the illegal card game in the absence of a statute authorizing a recovery of gambling losses. The court pointed out that it had frequently been decided that courts would not become the arbiters of incidental acts of participants in gambling games which were prohibited by law, and that public policy precluded courts from declaring and distinguishing between degrees of turpitude of parties who engaged in outlawed transactions, since otherwise, courts might be compelled to decide which party had cheated the most. (*Id.* at p. 27.)

"Clearly, if the gaming, whatever be its character, is conducted according to rule, the one losing money in a wager upon the result would be denied any remedy at law. It is difficult to perceive how he could be entitled to greater consideration because of cheating if the game was conducted fairly, or the result prearranged. If such facts shall enter into the consideration of one's right to recover money lost in betting, then it inevitably follows that the courts must sit as arbiters of every game upon which money is wagered, act as judge of the race-course, and umpire the prize-ring." (*Schmitt* v. *Gibson* (1910) 12 Cal.App. 407, 415-416 [107 P. 517].) Penal Code section 337a provides: "Every person . . . 6. Who lays, makes, offers or accepts any bet or bets, or wager or wagers, upon the result, or purported result, of any . . . mechanical apparatus, is punishable by imprisonment in the county jail for a period of not more than one year or in the state prison for a period not exceeding two years."

Appellant argues incorrectly that the California courts have reevaluated the doctrine of *in pari delicto* since the *Wallace* decision. He cites *Tri-Q, Inc.* v. *Sta-Hi Corp.* (1965) 63 Cal.2d 199 [45 Cal.Rptr. 878, 404 P.2d 486], an action to enjoin violation of the Unfair Practices Act. There the court found that the corporate officer who joined in an agreement that recited consideration which was not the true consideration, did not enter into the agreement with any wrongful purpose and that his only moral fault arose out of his knowledge of the corporation's illegal purposes and actions. In effect, the court found that the officer was not *in pari delicto*.

*Norwood* v. *Judd* (1949) 93 Cal.App.2d 276 [209 P.2d 24], dealt with a situation where one partner had secured a contractor's license in his own name rather than in that of the partnership. It was held that this lack of a valid license for the partnership did not prevent the other partner from obtaining an accounting. The court pointed out "that this is not a case where the parties engaged in a business prohibited by statute or public policy, or where a license would not have been issued had application been made." (*Id.* at p. 283.) The court distinguished a business "which

has been illegally conducted for lack of license . . . from an unlawful and forbidden enterprise, . . ." (*Id.*, p. 285, quoting *Denning* v. *Taber*, 70 Cal.App.2d 253, 257 [160 P.2d 900].) The court stated that licensing statutes are passed primarily for the protection and safety of the public, and not for "the benefit of a greedy partner who seeks to keep for himself all of the fruits of the partnership enterprise to the exclusion of another partner entitled to share therein." (*Id.* at p. 286.)

The case at bench falls within the distinction made in *Norwood* between businesses that are conducted illegally because of failure to obtain a license and those that are unlawful and forbidden enterprises. *Norwood* cited with approval the case of *Hooper* v. *Barranti* (1947) 81 Cal.App.2d 570 [184 P.2d 688], wherein two persons agreed to operate a tavern in partnership under a license held by one of them. In *Hooper,* the partnership agreement itself provided for the conducting of the bar business for 15 months without a proper license. Furthermore, in *Hooper* it was impossible for the parties to enter into a lawful agreement because one of the proposed partners was a noncitizen, and aliens could not secure a liquor license as a partner or otherwise. In *Hooper,* the action for an accounting was dismissed on the grounds that the claim could proceed only from the partnership agreement, and that the agreement was illegal. In the case at bar we are talking about a forbidden enterprise under Penal Code section 337a, subdivision 6. As stated in *Hooper,* an action may not be maintained on an illegal agreement.

In *Smith* v. *Turner* (1965) 238 Cal.App.2d 141 [47 Cal.Rptr. 582], plaintiffs, inexperienced in corporate matters, paid a seller for shares of stock before a permit to issue the shares was recieved. The commissioner of corporations therefore refused to issue the permit. Plaintiffs began to fear they would not receive the shares and they therefore signed false receipts for the return of the money, so that the permit would be granted. In an action for recovery of their money, plaintiffs were held not to be *in pari delicto* with the defendant. The court pointed out that the plaintiffs were not experienced in corporate matters while the defendant was and, moreover, plaintiffs belong to the class of persons the securities laws were intended to protect. (*Id.* at p. 149.)

Appellant attempts to avoid the application of the cases applying the *in pari delicto* rule to gambling by stating that the cases cited did not contain allegations such as are in his complaint, of the gambling being conducted by negligence, negligent supervision, fraud and theft. The answer to that is that no matter what the happenings were called, nor how they were brought about, the simple fact is that they constituted gambling prohibited by law and voluntarily entered into by the parties.

Appellant does not belong to the class of persons to be protected under section 337a of the Penal Code, nor was the activity illegal for mere failure to obtain a permit or license, nor was the wrongful purpose of the activity shared solely by appellant—both appellant and respondents knew they were engaging in gambling. ■ The gambling activity engaged in in the instant case can only be classified as an unlawful and forbidden enterprise to which the doctrine of *in pari delicto* applies.

It is true that there are some jurisdictions which do not follow the California rule (see Annot., Recovery of money or property lost through cheating or fraud in forbidden gambling or game, 39 A.L.R.2d 1213). However, appellant has not shown that the California rule is other than herein set forth.

■ In his brief appellant spends several interesting pages to convince us that there are such persons as compulsive gamblers, a matter of common knowledge. There is no allegation in the complaint that appellant is a compulsive gambler, but apparently the brief desires us to believe that he is a compulsive gambler and that the complaint could be amended to so state. Assuming that he is a compulsive gambler makes no difference in the determination of this case. A compulsive gambler is no less *in pari delicto* when indulging in illegal gambling than a noncompulsive one. Moreover, to distinguish between compulsive and noncompulsive gamblers would encourage the latter to claim they are compulsive.

Appellant cites *Robinson* v. *California* (1962) 370 U.S. 660 [8 L.Ed.2d 758, 82 S.Ct. 1417], holding that a statute cannot constitutionally make the status of narcotic addiction a criminal offense as authority for his contention that a compulsive gambler cannot be held to be *in pari delicto* in illegal gambling. That is a non sequitur. Possibly *Robinson* would support a holding that a statute cannot make the status of compulsive gambler a criminal offense but it is in nowise applicable to our problem. The United States Supreme Court refused to follow the same reasoning as used in *Robinson* for a charge of intoxication in a public place. (*Powell* v. *Texas* (1968) 392 U.S. 514 [20 L.Ed.2d 1254, 88 S.Ct. 2145].) An entirely different issue is raised by defining a certain status as a crime than the issue of whether one may seek civil redress in the courts for any wrong he may have incurred in the pursuit of his particular addiction or illness. It should further be noted that *Robinson* is based upon the rationale that it would be cruel and unusual punishment to imprison a narcotic addict for any period of time merely because he is ill. However, in the instant case we are not concerned with the Eighth Amendment's prohibition against cruel and unusual punishment.

As it clearly appears that because of the necessary application of the doctrine of *in pari delicto* appellant cannot state a cause of action, the court correctly sustained the demurrer without leave to amend.

*Appointment of receiver and denial of injunction were proper.*

Inasmuch as the complaint fails to state a cause of action upon any theory upon which appellant would be entitled to damages, appellant is not entitled under any theory to either the appointment of a receiver to take charge of respondents' assets or the issuance of an injunction to restrain respondents from disposing of those assets.

The judgment and order are affirmed.

Devine, P. J., and Good, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 25, 1973.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.